**UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF MICHIGAN
Southern Division**

|  |  |
|---|---|
| JOSH SCHEXNAILDRE, individually and on behalf of all others similarly situated,<br><br>    Plaintiff,<br><br>v.<br><br>MUNSON HEALTHCARE and TRAVERSE ANESTHESIA ASSOCIATES, P.C.,<br><br>    Defendants. | Civil Action No. _____<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiff Josh Schexnaildre ("Plaintiff"), on his behalf and on behalf of a proposed class of similarly situated individuals, hereby alleges as follows against defendants Munson Healthcare ("Munson") and Traverse Anesthesia Associates, P.C. ("TAA").

## INTRODUCTION

1.     This action addresses an agreement between Munson, which bills itself as "northern Michigan's largest and leading healthcare system" and TAA, which is a "medical professional corporation that provides anesthesia and pain management services at several general hospitals and outpatient sites in the Grand Traverse region," to restrain competition and reduce compensation for providers of anesthesia services.  Plaintiff is a Certified Registered Nurse Anesthetist ("CRNA") who brings this suit individually and on behalf of the Proposed Class to enjoin Defendants from maintaining and enforcing their unlawful "no poach" agreement, and to recover damages.

2.     Defendants Munson and TAA (collectively "Defendants") compete with one another to hire and retain qualified providers of anesthesia services, including CRNAs.  Beginning

on a date currently unknown to Plaintiff, Munson agreed that it would not solicit or hire TAA's anesthesia service providers while they were employed by TAA and for at least one year after the person had left TAA's employment. This agreement is still in effect and is being enforced by Munson.

3.      The agreement between Munson and TAA was not ancillary to any legitimate business transaction or lawful collaboration between Defendants. Defendants' arrangement was a naked agreement to unlawfully eliminate competition for, suppress the compensation paid to, and otherwise reduce the expense of obtaining the services of qualified providers of anesthesia services.

4.      Defendants' agreement accomplished its purpose. It eliminated competition for anesthesia service providers in northern Michigan and suppressed the compensation and benefits that otherwise would have flowed to anesthesia service providers had there been an open and competitive market for these services.

5.      Defendants' agreement not only denied job opportunities that were otherwise available from Munson, but also prevented providers of anesthesia services employed by TAA and Munson from negotiating for better terms and conditions of employment.

6.      The existence of this agreement was only revealed to the Plaintiff when he recently inquired about a CRNA position at a hospital operated by Munson.  Plaintiff, who was employed by TAA, was told by the recruiter at the hospital that while there was an opening for a CRNA, which he was qualified to fill, the Plaintiff could not be considered for a position at any Munson facility during and for one year after his employment with TAA because of the agreement Munson has with TAA.

## JURISDICTION AND VENUE

7.      This action arises under Section 1 of the Sherman Act (15 U.S.C. § 1), Sections 4
and 16 of the Clayton Act (15 U.S.C. §§ 15(a) and 26), and Sections 445.772 and 445.778, Section
8(2) of the Michigan Antitrust Reform Act ("MARA").   Plaintiff seeks the recovery of treble
damages, costs of suit, and reasonable attorneys' fees for the injuries that Plaintiff and members
of the Proposed Class sustained as a result of Defendants' anticompetitive conduct, as well as a
declaration that the no-poach agreement is illegal and an injunction against its enforcement. The
Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337(a), 1367, 1407, and 15
U.S.C. § 15.

8.      Venue is proper in this District pursuant to 15 U.S.C. §§ 15(a), 22 and 28 U.S.C.
§§ 1391(b), (c), and (d) because during the Proposed Class Period, Defendants resided, transacted
business, were found, or had agents in this District, and a substantial portion of Defendants'
activity discussed below has been carried out in this District.

9.      During the Proposed Class Period, Defendants assessed, hired, and retained
employees and obtained goods and services in a continuous and uninterrupted flow of interstate
commerce, including in this District. Defendants' conduct had close and substantial effect on
interstate commerce in the United States, including in this District.

10.      This Court has *in personam* jurisdiction over Defendants because they, either
directly or through the ownership or control of their subsidiaries, *inter alia*: (a) transacted business
in this District; (b) participated in the assessment, hiring, and retention of employees in this
District; (c) maintained substantial aggregate contacts with this District; or (d) entered into  an
illegal agreement that was directed at, and had a direct, substantial, reasonably foreseeable, and

intended effect of causing injury to the business or property of persons residing in, located in, or doing business in this District

## PARTIES

11.     Plaintiff Josh Schexnaildre was employed by TAA as a CRNA during the Proposed Class Period.

12.     Defendant Munson Healthcare is a not-for-profit health care system serving northern Michigan with its headquarters located at 1105 Sixth Street, Traverse City, Michigan. It is the largest health care system in northern Michigan, serving people in 30 counties, and owns or operates nine hospitals. It is estimated to have an 89% market share in Traverse County. Munson had revenue from charges for services of over $80.9 million in 2018.

13.     Defendant Traverse Anesthesia Associates, P.C. is located at 1221 6th Street, Traverse City, Michigan. TAA provides anesthesia and pain management services at hospitals and outpatient sites in northern Michigan.

## FACTUAL ALLEGATIONS

### Defendants' No-Poach Agreement

14.     Munson and TAA are competitors in the recruitment, hiring, and retention of anesthesia service providers. At a time as yet unknown to Plaintiff, Munson and TAA entered into an agreement to eliminate competition between themselves for anesthesia service providers.

15.     In 2021, Plaintiff learned that a hospital operated by Munson had an opening for an anesthesia service provider. Plaintiff contacted an employee of the hospital, who confirmed that the hospital was actively looking to fill such a position. Plaintiff expressed interest in the position.

16.     The hospital employee, however, told Plaintiff that he could not be considered for the position because of an agreement between Munson and TAA that prohibited Munson from

hiring any TAA employees to work for any Munson facility while employed by TAA or for a period of one year after leaving TAA.

17.     The hospital employee explained that the CEO of the hospital had directly provided the details of the agreement to Munson recruiters.

18.     Plaintiff spoke to other Munson human resources employees, who affirmed the existence of the agreement.

**Effects of No-Poach Agreements**

19.     Competition in labor markets is hindered by imperfect information about supply and demand. Unlike commodity markets where the near instantaneous reporting of market-wide demand and supply determines a single market price, participants in the labor market must individually seek out job opportunities and make difficult judgments about their ability to negotiate terms and conditions of employment with no, limited, or opaque information about employer demand and competition from other job seekers. This is particularly true for positions like those for anesthesia service providers in medical care facilities, that require specialized education, professional certification, and skill and experience, because there are few openings and infrequent turnover. As a result, any limitation that prevents qualified applicants from seeking a job opening will not only give the employer the upper hand in any negotiation with prospective applicants but also force existing employees to remain employed for less compensation and benefits because there are no alternative positions available to counterbalance the employers' asymmetric knowledge of the market.

20.     "Price discovery" refers to the process by which a market searches for prices when information about supply and demand is imperfect. The speed at which price discovery operates depends on the manner in which, and how rapidly, information is disseminated among employers

and employees. Both Plaintiff and the Proposed Class work in a price discovery environment. Imperfect information about supply and demand characterizes the job market for anesthesia service providers.

21. The specialized field of anesthesia service providers in the medical care industry is also subject to high supply-demand pressures. There is high demand for and limited supply of anesthesia service providers.  Qualified individuals, like those working for the Defendants, are essential employees. However, if the hiring process is encumbered with prohibitions against the solicitation and hiring of this small talent pool, the price discovery environment will create market friction that will mask the supply-demand dynamic and suppress wages and benefits.

22. Soliciting and hiring employees from other employers is a particularly efficient and effective method of competing for qualified employees. Soliciting involves communicating directly—by phone, email, social and electronic networking, or in person—with competitors' employees who have not applied for a job opening. Such direct solicitation can be done by the soliciting firm's personnel or by outside recruiters. Firms rely on direct solicitation of employees of other companies because those individuals have specialized experience and may be less likely to respond to other methods of recruiting.

23. In a competitive labor market, Defendants would compete with one another to attract and retain anesthesia service providers for their needs. It is this competition among employers for those employees that determines the level of compensation. While employers would like to pay low wages for high-quality anesthesia service providers, competition increases the available job opportunities and requires employers to make the best possible offers to prospective anesthesia service providers. It also improves anesthesia service providers' ability to negotiate for better salaries and other terms of employment.

24.     Competition for workers via lateral hiring has a significant impact on compensation in a number of ways. First, competition facilitates the flow of information about opportunities and compensation. For example, employees who are solicited, interviewed, or offered a job by a competitor gain insight into how other companies value their work and experience, and what compensation and benefits their employers competitors typically pay or are willing to pay to get them to leave their current employer. This information is not readily available to anesthesia service providers, who are generally able to rely only on these encounters and word-of-mouth from peers and colleagues for such information. Employers, on the other hand, often have resources available to them that their employees lack to gather information regarding market compensation rates. No-poach agreements further restrain employees' access to this information by eliminating or reducing the communications that encourage the flow of information.

25.     Defendants' agreement precluded this information about opportunities and compensation from reaching anesthesia service providers at TAA, and perhaps other anesthesia service providers, including those at Munson. Those employees could have used that information to negotiate higher pay at their existing jobs or accept superior offers from their employers' competitors. Employees who change jobs voluntarily typically have faster wage growth than those who remain in the same job. Anesthesia service providers could also share this information with their co-workers, multiplying the impact of each offer as the job information spread through social channels.

26.     The threat of losing employees to competitors also encourages employers to increase and maintain compensation to ensure high morale, productivity, and retention. Absent competitive compensation, employees are more likely to seek such compensation elsewhere, be receptive to recruiting by competitors, limit their productivity, and undermine morale. After

employees receive offers from competitors, retaining those employees may require raising their compensation and pressure employers to raise the compensation of other employees. Employers therefore have an incentive to prevent lateral departures by paying employees competitive salaries. In competitive industries, preventive retention measures thus lead to increased compensation for employees. But Defendants' unlawful agreement enabled them to avoid such measures at the expense of their anesthesia service providers.

27.     Because of their specialized education, training, knowledge, and skills, anesthesia service providers are very valuable employees in the healthcare industry. Anesthesia service providers would not view employment in other professions or fields to be an adequate economic substitute for their employment as anesthesia service providers.  Because of their investment in education, certification, licensing and other professional requirements, and experience, anesthesia service providers cannot capitalize on their investment to become anesthesia service providers in any other market.

28.     Further, healthcare employers cannot use employees from other industries or even disciplines within the medical field as substitutes for anesthesia service providers.

29.     Because Plaintiff and the Proposed Class members possess skills and experience that cannot be found in other employees, employers like Defendants want to retain them, but to do so they would have to increase financial incentives in a competitive market.  On the other hand, limiting a primary source of competition for anesthesia service providers using a no-poach agreement allowed Defendants to pay lower wages to anesthesia service providers than they would have paid in the absence of the no-poach agreement.

30.     Defendants' anticompetitive agreement restrained competition for anesthesia service providers and disrupted the normal bargaining and price-setting mechanisms that apply in

competitive labor markets. This disruption and suppression of compensation was not limited to particular individuals who would otherwise have been solicited or sought to change employers. The effects of the no-poach agreement caused widespread impact on Defendants' anesthesia service providers by eliminating or reducing job opportunities, the flow of information, and the need for preventive and reactive increases to compensation for the entire Proposed Class.

**Relevant Markets**

31.     The relevant markets are for anesthesia service providers in northern Michigan.

**Tolling of the Statute of Limitations**

32.     During the Proposed Class Period, Defendants concealed their conspiracy, such that Plaintiff and Proposed Class members could not have discovered it through the exercise of reasonable diligence. Plaintiff and members of the Proposed Class did not and could not have discovered through the exercise of reasonable diligence that Defendants had entered into a secret no-poach agreement.  Plaintiff and Proposed Class members did not know of any facts that would have caused a reasonable person to suspect that Defendants had agreed to restrain competition for the services of anesthesia service providers.  For these reasons, all applicable statutes of limitation have been tolled based on the discovery rule, the doctrine of equitable tolling, or Defendants' fraudulent concealment. Defendants are thus estopped from relying on any statutes of limitations in defense of this action.

**CLASS ACTION ALLEGATIONS**

33.     Plaintiff brings this action individually and on behalf all those similarly situated as a proposed class action under Rules 23(a) and (b)(1)(A), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, seeking monetary damages and injunctive and declaratory relief on behalf of the following Proposed Class (the "Proposed Class"):

All natural persons who were or are employed by Defendants as anesthesia service providers. Excluded from the Proposed Class are Defendants' directors, officers, or employees who entered into the no-poach agreement.

34.     Plaintiff believes that the Proposed Class members are so numerous and geographically dispersed that joinder of all members is impracticable.

35.     Plaintiff's claims are typical of the claims of the Proposed Class as they arise out of the same course of Defendants' conduct and the same legal theories.

36.     Plaintiff will fairly and adequately represent the interests of the Proposed Class and has no conflict with the interests of the Proposed Class.

37.     Prosecuting separate actions by Proposed Class members would create a risk of inconsistent adjudications with respect to individual Proposed Class members that would establish incompatible standards of conduct for the Defendants.

38.     Defendants have acted or refused to act on grounds that apply generally to the Proposed Class, so that final injunctive or corresponding declaratory relief is appropriate respecting the Proposed Class as a whole.

39.     There are numerous questions of law and fact common to the Proposed Class, including, but not limited to, whether:

  a.   Defendants agreed that Munson would not solicit or hire TAA's anesthesia service providers;

  b.   such agreement was a per se violation of the Sherman Act;

  c.   such agreement was a violation or flagrant violation of the Michigan Antitrust Reform Act;

  d.   Defendants have fraudulently concealed their agreement;

  e.   Defendants' conduct suppressed compensation below competitive levels for anesthesia service providers;

f.   Plaintiff and the Proposed Class suffered antitrust injury as a result of Defendants' agreement; and

g.   Defendants' agreement should be declared unlawful and Defendants enjoined from abiding by its terms.

40.    During the Proposed Class Period, Plaintiff was employed by TAA as an anesthesia service provider. Plaintiff's interests are coincident with and not antagonistic to those of the other members of the Proposed Class.

41.    Plaintiff is a member of the Proposed Class, has claims that are typical of the claims of the Proposed Class members, and will fairly and adequately protect the interests of the members of the Proposed Class. In addition, Plaintiff is represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

42.    The above-referenced common questions of law and fact predominate over any questions affecting only individual members of the Proposed Class.

43.    A class action is superior to any other means of resolving this litigation. Separate actions by individual Proposed Class members would be inefficient and would create the risk of inconsistent or varying adjudications. There will be no material difficulty in the management of this action as a class action.

**FIRST CLAIM FOR RELIEF**
**(Violation of the Sherman Act, Section 1)**

44.    Plaintiff realleges and incorporates by reference each of the allegations contained in the preceding paragraphs as if fully set forth herein.

45.    Defendants, by and through their officers, directors, employees, agents, or other representatives, entered into and engaged in an unlawful agreement in restraint of trade and commerce in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1. Specifically, Defendants agreed to restrict competition for Proposed Class members' services through Munson refraining

from soliciting or hiring TAA's anesthesia service providers, thereby fixing and suppressing Proposed Class members' compensation.

46.     Defendants' agreement has included concerted action and undertakings with the purpose and effect of: (a) fixing Plaintiff's and the Proposed Class's compensation at artificially low levels; and (b) eliminating, to a substantial degree, competition between Defendants for anesthesia service providers.

47.     Defendants' agreement injured Plaintiff and the members of the Proposed Class by suppressing their compensation and depriving them of free and fair competition in the market for their services.

**SECOND CLAIM FOR RELIEF**
**(Violation of Section 445.772 of the Michigan Antitrust Reform Act)**

48.     Plaintiff realleges and incorporates by reference each of the allegations contained in the preceding paragraphs as if fully set forth herein.

49.     Defendants, by and through their officers, directors, employees, agents, or other representatives, entered into and engaged in an unlawful agreement in restraint of trade and commerce in violation of section 445.772 of the MARA. Specifically, Defendants agreed to restrict competition for Proposed Class members' services through Munson refraining from soliciting or hiring TAA's anesthesia service providers, thereby fixing and suppressing Proposed Class members' compensation.

50.     Defendants' agreement has included concerted action and undertakings with the purpose and effect of: (a) fixing Plaintiff's and the Proposed Class's compensation at artificially low levels; and (b) eliminating, to a substantial degree, competition between Defendants for anesthesia service providers.

51.     Defendants' contract or conspiracy was flagrant and injured Plaintiff and the members of the Proposed Class by suppressing their compensation and depriving them of free and fair competition in the market for their services.

52.     Plaintiff and the Proposed Class members seek injunctive and other equitable relief, treble actual damages sustained by reason of Defendants' flagrant violation of the MARA, taxable costs and reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf the Proposed Class of similarly situated persons, respectfully requests the following:

a.     That the Court certify this lawsuit as a class action under Rules 23(a), (b)(1)(A), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, that Plaintiff be designated as the Class representative, and that Plaintiff's counsel be appointed as counsel for the Class;

b.     That the conduct alleged herein be declared, adjudged, or decreed to be per se unlawful under Section 1 of the Sherman Act, 15 U.S.C. § 1, and a flagrant violation of Section 445.772 of the MARA;

c.     That the Court declare that Defendants' agreement is illegal and that Defendants be enjoined from abiding by the terms of their illegal agreement;

d.     That Plaintiff and the Proposed Class recover their damages, trebled, and the costs of the suit, including reasonable attorneys' fees as provided by law; and

e.     That the Court provide for such other and further relief as it deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff, individually and on behalf of the

Proposed Class, demands a trial by jury on all issues so triable.


Dated: August 2, 2021

/s/ David H. Fink
David H. Fink (P28235)
Nathan J. Fink (P75185)
**FINK BRESSACK**
38500 Woodward Avenue, Suite 350
Bloomfield Hills, MI 48304
Telephone: (248) 971-2500
dfink@finkbressack.com
nfink@finkbressack.com


Joseph C. Kohn*
William E. Hoese*
Aarthi Manohar*
**KOHN, SWIFT f& GRAF, P.C.**
1600 Market Street, Suite 2500
Philadelphia, PA 19103
(215) 238-1700
jkohn@kohnswift.com
whoese@kohnswift.com
amanohar@kohnswift.com


Gregory P. Hansel*
Randall B. Weill*
Michael S. Smith*
**PRETI, FLAHERTY, BELIVEAU
   & PACHIOS LLP**
One City Center, P.O. Box 9546
Portland, ME  04112-9546
Telephone: (207) 791-3000
ghansel@preti.com
rweill@preti.com
msmith@preti.com

*Attorneys for Plaintiff and the Proposed Class*

* Application for admission to be submitted