**UNITED STATES DISTRICT COURT**
**IN THE WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JOSH SCHEXNAILDRE, individually and on
behalf of all others similarly situated,

              Plaintiff,

v.

MUNSON HEALTHCARE and TRAVERSE
ANESTHESIA ASSOCIATES, P.C.,

              Defendants.

Case No. 1:21-cv-00660

Hon. Robert J. Jonker

---

**BRIEF IN SUPPORT OF**
**JOINT MOTION TO DISMISS PLAINTIFF'S COMPLAINT BY**
**DEFENDANTS MUNSON HEALTHCARE & TRAVERSE ANESTHESIA ASSOCIATES**

---

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

INTRODUCTION ......................................................................................................................1

ALLEGATIONS........................................................................................................................2

STANDARD OF REVIEW ........................................................................................................5

ARGUMENT .............................................................................................................................7

I.      THE COMPLAINT DOES NOT PLAUSIBLY PLEAD THE EXISTENCE OF
        THE ALLEGED AGREEMENT BETWEEN MUNSON HEALTHCARE AND
        TAA. .................................................................................................................................7

II.     THE COMPLAINT DOES NOT PLAUSIBLY PLEAD THAT MUNSON
        HEALTHCARE PARTICIPATED IN THE ALLEGED AGREEMENT. .......................14

III.    PLAINTIFF'S MICHIGAN ANTITRUST REFORM ACT CLAIM FAILS FOR
        THE SAME REASONS. .................................................................................................19

CONCLUSION.........................................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*In re Aluminum Warehousing Antitrust Litig.*,
   No. 13-md-2481 (KBF), 2015 U.S. Dist. LEXIS 26412 (S.D.N.Y. Mar. 4, 2015) ................18

*Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*,
   323 F.3d 366 (6th Cir. 2003) ...................................................................................................19

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)...................................................................................................................5

*Ass'n of Am. Physicians & Surgeons., Inc. v. Am. Bd. of Med. Specialties*,
   No. 20-3072, 2021 U.S. App. LEXIS 30271 (7th Cir. Oct. 8, 2021) ........................................6

*Associated Gen. Contractors of Cal., Inc. v. Carpenters*,
   459 U.S. 519 (1983)...................................................................................................................6

*Aurora Cable Commc'ns, Inc. v. Jones Intercable, Inc.*,
   720 F. Supp. 600 (W.D. Mich. 1989) .....................................................................................20

*In re Auto. Parts Antitrust Litig.*,
   No. 12-md-02311, 2016 U.S. Dist. LEXIS 193193 (E.D. Mich. Apr. 13, 2016) ...................15

*In re Baby Food Antitrust Litig.*,
   166 F.3d 112 (3d Cir. 1999)......................................................................................................7

*Balaklaw v. Lovell*,
   882 F. Supp. 892 (N.D.N.Y. 1993) .........................................................................................13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)........................................................................................................5, 6, 7, 8

*City of Pontiac v. Blue Cross Blue Shield of Mich.*,
   No. 11-10276, 2012 U.S. Dist. LEXIS 45082 (E.D. Mich. Mar. 30, 2012) ...........................20

*Consultants & Designers, Inc. v. Butler Serv. Grp., Inc.*,
   720 F.2d 1553 (11th Cir. 1983) ..............................................................................................13

*In re Digital Music Antitrust Litig.*,
   812 F. Supp. 2d 390 (S.D.N.Y. 2011)......................................................................................18

*Dos Santos v. Columbus-Cuneo-Cabrini Med. Ctr.*,
   No. 81 C 4296, 1983 U.S. Dist. LEXIS 12377 (N.D. Ill. Oct. 25, 1983) ...............................13

*Downing v. Ford Motor Co.*,
No. 18-1335, 2018 U.S. App. LEXIS 27339 (6th Cir. Sep. 24, 2018) ...................................19

*Elias v. Fed. Home Loan Mortg. Corp.*,
581 F. App'x 461 (6th Cir. 2014) ...........................................................................................19

*Energy Conversion Devices Liquidation Trust v. Trina Solar Ltd.*,
No. 13-14241, 2014 U.S. Dist. LEXIS 154736 (E.D. Mich. Oct. 31, 2014) ..........................19

*Fonseca v. Hewlett-Packard Co.*
No. 20-56161, 2021 U.S. App. LEXIS 30685 (9th Cir. Oct. 14, 2021) ...................................9

*Fonseca v. Hewlett-Packard Co.*,
No. 19cv1748-GPC-MSB, 2020 U.S. Dist. LEXIS 144477 (S.D. Cal. Aug. 11, 2020).. *passim*

*Frank v. Dana Corp.*,
646 F.3d 954 (6th Cir. 2011) ..................................................................................................11

*Frost v. LG Elecs., Inc.*,
801 F. App'x 496 (9th Cir. 2020) ........................................................................................9, 14

*Frost v. LG Elecs., Inc.*,
No. 16-cv-05206-BLF, 2018 U.S. Dist. LEXIS 204502 (N.D. Cal. June 22, 2018) ....... *passim*

*Geddie v. Seaton*,
No. 3:06-CV-0895-R, 2006 U.S. Dist. LEXIS 55106 (N.D. Tex. Aug. 8, 2006)...................19

*Gerritsen v. Warner Bros. Ent., Inc.*,
112 F. Supp. 3d 1011 (C.D. Cal. 2015) ...................................................................................3

*In re High Fructose Corn Syrup Antitrust Litig.*,
295 F.3d 651 (7th Cir. 2002) ...................................................................................................7

*Hyland v. HomeServices of Am., Inc.*,
771 F.3d 310 (6th Cir. 2014) ...................................................................................................7

*Ley v. Visteon Corp.*,
543 F.3d 801 (6th Cir. 2008) .................................................................................................11

*Lifeline Ltd. No. II v. Conn. Gen. Life Ins. Co.*,
821 F. Supp. 1201 (E.D. Mich. 1993)....................................................................................13

*In re Lithium Ion Batteries Antitrust Litig.*,
No. 13-MD-2420 YGR, 2014 U.S. Dist. LEXIS 7516 (N.D. Cal. Jan. 21, 2014)..................16

*Little Caesar Enters., Inc. v. Smith*,
895 F. Supp. 884 (E.D. Mich. 1995)......................................................................................20

*Longmire v. Mich. Dep't of Corr.*,
  454 F. Supp. 3d 702 (W.D. Mich. 2020) ................................................................5

*Med. Ctr. at Elizabeth Place, LLC v. Atrium Health Sys.*,
  922 F.3d 713 (6th Cir. 2019) ...............................................................................13

*Mich. Div. - Monument Builders of N. Am. v. Mich. Cemetery Ass'n*,
  458 F. Supp. 2d 474 (E.D. Mich. 2006)................................................................15

*Minn. Ass'n of Nurse Anesthetists v. Unity Hosp.*,
  208 F.3d 655 (8th Cir. 2000) ...............................................................................13

*NicSand, Inc. v. 3M Co.*,
  507 F.3d 442 (6th Cir. 2007) .................................................................................6

*Osborne v. Metro. Gov't of Nashville & Davidson County*,
  935 F.3d 521 (6th Cir. 2019) .................................................................................3

*Overall v. Ascension*,
  23 F. Supp. 3d 816 (E.D. Mich. 2014)....................................................................3

*In re Packaged Seafood Prods. Antitrust Litig.*,
  338 F. Supp. 3d 1118 (S.D. Cal. 2018)................................................................15

*Precision Assocs. v. Panalpina World Transp. (Holding) Ltd.*,
  No. 08-CV-42 (JG)(VVP), 2011 U.S. Dist. LEXIS 51330 (E.D.N.Y. Jan. 4, 2011) .............15

*In re Processed Egg Prods. Antitrust Litig.*,
  821 F. Supp. 2d 709 (E.D. Pa. 2011) ...................................................................15

*Reddy v. Good Samaritan Hosp. & Health Ctr.*,
  137 F. Supp. 2d 948 (S.D. Ohio 2000) .................................................................13

*In re Ry. Indus. Emp. No-Poach Antitrust Litig.*,
  395 F. Supp. 3d 464 (W.D. Pa. 2019)........................................................14, 16, 19

*SD3, LLC v. Black & Decker (U.S.) Inc*,
  801 F.3d 412 (4th Cir. 2015) ......................................................................14, 18, 19

*State Farm Mut. Auto. Ins. Co. v. Nat'l Gen. Ins. Co.*,
  No. 1:15-cv-1314, 2017 U.S. Dist. LEXIS 220757 (W.D. Mich. Feb. 9, 2017) ...................18

*In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*,
  CIV. A. NO. 16-5073, 2017 U.S. Dist. LEXIS 176555 (E.D. Pa. Oct. 25, 2017)..................18

*Superior Offshore Int'l, Inc. v. Bristow Grp.*,
  738 F. Supp. 2d 505 (D. Del. 2010)......................................................................11

*Superior Prod. P'ship v. Gordon Auto Body Parts Co.*,
 784 F.3d 311 (6th Cir. 2015) ..................................................................12

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
 586 F. Supp. 2d 1109 (N.D. Cal. 2008) .................................................15

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*,
 552 F.3d 430 (6th Cir. 2008) ..........................................................5, 7, 8

*In re Travel Agent Comm'n Antitrust Litig.*,
 583 F.3d 896 (6th Cir. 2009) ....................................................5, 6, 14, 19

*Ulrich v. Moody's Corp.*,
 No. 13-CV-00008 (VSB), 2014 U.S. Dist. LEXIS 138082 (S.D.N.Y. Sept. 30, 2014) .. *passim*

*United States v. Rite Aid Corp.*,
 No. 2:11-cv-11940, 2019 U.S. Dist. LEXIS 233503 (E.D. Mich. Dec. 12, 2019) ...................3

*United States ex rel. Dingle v. BioPort Corp.*,
 270 F. Supp. 2d 968 (W.D. Mich. 2003) ..................................................3

*Wyser-Pratte Mgmt. Co. v. Telxon Corp.*,
 413 F.3d 553 (6th Cir. 2005) .....................................................................3

*Z Techs. Corp. v. Lubrizol Corp.*,
 753 F.3d 594 (6th Cir. 2014) ...................................................................19

*In re Zinc Antitrust Litig.*,
 155 F. Supp. 3d 337 (S.D.N.Y. 2016)......................................................16

**State Cases**

*Innovation Ventures, LLC v. Liquid Mfg., LLC*,
 499 Mich. 491 (2016) ..............................................................................19

**Statutes**

M.C.L. § 445.784................................................................................................19

**Rules**

Fed. R. Civ. P. 12(b)(6).......................................................................................1

## INTRODUCTION

Plaintiff Joshua Schexnaildre's Complaint should be dismissed because none of its fifty-two paragraphs include the bare minimum *factual* allegations required to state an antitrust claim. Plaintiff alleges that Defendant Munson Healthcare—a non-profit corporate parent, affilated with several hospitals in northern Michigan—and Defendant Traverse Anesthesia Associates—a provider of anesthesia services at various hospitals in northern Michigan—violated the antitrust laws when they allegedly agreed that Munson Healthcare would not hire TAA employees. Plaintiff's claim that Defendants agreed to restrict his employment opportunities, thereby suppressing his earnings, is based only on a few vague statements allegedly made to him when he inquired about a job at an unidentified hospital affiliated with Munson Healthcare. That is it.

Despite the inadequacy of Plaintiff's allegations, Plaintiff seeks to force Defendants to incur the high costs associated with defending against antitrust claims brought not only by Plaintiff individually, but also on behalf of an ill-defined class of current and former employees of Defendants, no matter how groundless. However, Federal Rule of Civil Procedure 12(b)(6) is meant to ensure that such an unfair and improper result does not occur; it requires dismissal where a complaint lacks the factual allegations required to adequately plead an anticompetitive agreement. Plaintiff's Complaint is so lacking. ***First***, Plaintiff fails to allege, as required by Sixth Circuit precedent, *who* entered into the alleged agreement, *when* and *where* they entered into the alleged agreement, and even *why* Munson Healthcare would enter into the alleged "naked," yet one-sided, agreement not to hire TAA employees. ***Second***, Plaintiff's allegations regarding his efforts to obtain a job at an unidentified hospital affiliated with Munson Healthcare do not include sufficient factual allegations about Munson Healthcare—which is not a hospital at all. In short, Plaintiff does not even attempt to differentiate between alleged conduct by Munson Healthcare and that of its affiliated hospitals. This sort of "group pleading" is not enough to tie

1

Munson Healthcare to the alleged agreement. And because there are only two parties to the alleged agreement, Plaintiff's failure to allege sufficient facts to indicate that Munson Healthcare agreed to anything with TAA compels the dismissal of TAA as well.

## ALLEGATIONS

Plaintiff is a certified registered nurse anesthetist who was employed by Defendant TAA during some part, not specified in the Complaint, of an undefined "Proposed Class Period." (RE 1, PageID.1, 4, at ¶¶ 1, 11.) TAA is a provider of "anesthesia and pain management services at hospitals and outpatient sites in northern Michigan." (RE 1, PageID.4, at ¶ 13.) Plaintiff does not allege at which hospitals and outpatient sites in northern Michigan TAA provides services, nor does he allege at which hospitals and outpatient sites in northern Michigan he worked when he was a TAA employee. And, although he never acknowledges that TAA provides services to hospitals affiliated with Munson Healthcare, or that, as part of TAA providing those services, he was assigned to work at a hospital affiliated with Munson Healthcare, Plaintiff does allege that Defendant Munson Healthcare "owns or operates" hospitals in northern Michigan. (RE 1, PageID.4, at ¶ 12.) The hospitals owned by Munson Healthcare, however, are separate corporate entities from Munson Healthcare itself.[1] *See* Munson Healthcare Amendment to Articles of

---

[1]      Munson Healthcare has also provided services to two independently owned hospitals. *See* Kalkaska County Hospital Authority Financial Statements and Supplementary Information, for years ended June 30, 2019 and 2018, at Notes 1 and 10 (stating that Kalkaska County Hospital Authority d/b/a Kalkaska Memorial Health System is "a governmental unit" that has "agreements with Munson Healthcare and its subsidiaries to receive administrative services"), filed with the Michigan Department of Treasury's Local Audit and Finance Division, available at <https://treas-secure.state.mi.us/LAFDocSearch/tl41R01.aspx?&lu_id=2449&doc_yr=2019&doc_code=AUD&doc_sqnb=1>; Sean Miller, *Mackinac Straits Signs Affiliation Agreement with Munson Healthcare*, Petoskey News, July 23, 2015, available at <https://www.petoskeynews.com/story/lifestyle/health-fitness/2015/07/28/mackinac-straits-signs-affiliation-agreement-with-munson-healthcare/45978177/> (reporting on agreement pursuant to which Munson Healthcare would provide services to Mackinac Straits Health System); Mackinac Straits Health System, Inc. Restated Articles of Incorporation, Oct. 28, 2014 filed with Michigan's Department of Licensing and Regulatory Affairs, available at <https://cofs.lara.state.mi.us/CorpWeb/

Incorporation, Nov. 15, 2018, at ¶ 2 (referring to each Munson Healthcare subsidiary hospitals as "a Michigan non-profit corporation"), filed with Michigan's Department of Licensing and Regulatory Affairs, available at <https://cofs.lara.state.mi.us/CorpWeb/CorpSearch/CorpSearch Redirector.aspx?Action=PDF&Path=IMAGES_STAGING/2018/1226/000074555/745556/Mast er.pdf>.[2]

Ultimately, Plaintiffs' claims center on his conclusory allegation that "Munson [Healthcare] agreed that it would not solicit or hire TAA's anesthesia service providers while they were employed by TAA and for at least one year after the person had left TAA's employment." (RE 1, PageID.1-2 at ¶ 2.) He further contends that the agreement that is the subject of his claims was a "naked" agreement—that is, the alleged agreement is not ancillary to any legitimate business arrangement between Munson Healthcare and TAA. (RE 1, PageID.2 at ¶ 3.) Plaintiff says he learned of this alleged agreement when he inquired about a job opening at an unidentified "hospital operated by Munson," and an unnamed "hospital employee" told him he could not be considered for the position "because of an agreement between Munson and TAA that prohibited Munson from hiring any TAA employees to work for any Munson facility while

---

CorpSearch/CorpSearchRedirector.aspx?Action=PDF&Path=CORP_LEGACY/D201410\2014314 03\E0154607.TIF>.

[2]    On a motion to dismiss, the court may consider "public records" or material "otherwise appropriate for the taking of judicial notice.'" *Osborne v. Metro. Gov't of Nashville & Davidson County*, 935 F.3d 521, 522 n.1 (6th Cir. 2019) (quoting *Wyser-Pratte Mgmt. Co. v. Telxon Corp*., 413 F.3d 553, 560 (6th Cir. 2005)). This includes articles of incorporation and financial statements. *See, e.g.*, *Overall v. Ascension*, 23 F. Supp. 3d 816, 825 (E.D. Mich. 2014) (taking judicial notice of defendants' "Articles of Incorporation . . . which are public documents filed with the Missouri and/or Michigan Secretary of State and available on the states' websites" and financial statements "because they are public documents" in considering motion to dismiss); *Gerritsen v. Warner Bros. Ent., Inc.*, 112 F. Supp. 3d 1011, 1033-34 (C.D. Cal. 2015) (same for "business entity profiles . . . retrieved from the California Secretary of State's website"); *United States ex rel. Dingle v. BioPort Corp*., 270 F. Supp. 2d 968, 973 (W.D. Mich. 2003) (same for a newspaper article); *United States v. Rite Aid Corp*., No. 2:11-cv-11940, 2019 U.S. Dist. LEXIS 233503, at *6 (E.D. Mich. Dec. 12, 2019) (same).

employed by TAA or for a period of one year after leaving TAA." (RE 1, PageID.5 at ¶¶ 15-16; *see also* RE 1, PageID.2 at ¶ 6 (referring to this hospital employee as a "recruiter").) Despite alleging that "the details" of the purported agreement were provided to "Munson recruiters" by that hospital's CEO and that "other" unnamed "Munson human resources employees . . . affirmed the existence of the agreement" to Plaintiff, (RE 1, PageID.5 at ¶¶ 17-18), Plaintiff fails to allege any of said "details" in the Complaint.

Notably, the Complaint is startling with respect to what Plaintiff does *not* allege. He does *not* allege when the Defendants entered into the purported agreement. He does *not* allege which of the Defendants' employees allegedly negotiated or entered into the agreement. He does *not* allege where the agreement was reached. He does *not* allege what constitutes an alleged "Munson facility" covered by the purported agreement. And, although he alleges he was told he would not be considered for one job at one unidentified hospital, he does *not* allege that anyone else was told that same thing. Nor does he allege that he, or anyone else, inquired about any other job at that, or any other, hospital affiliated with Munson Healthcare, but were denied the job as a result of the alleged agreement.

Based on his alleged experience, Plaintiff claims he, and others "who were or are employed by Defendants as anesthesia service providers," suffered damages in the form of reduced compensation. (RE 1, PageID.9-10, 12, at ¶¶ 33, 47.) But he does not define "anesthesia service providers," specifically failing to specify whether it is limited to certified registered nurse anesthetists, like himself, or also includes other providers like anesthesiologists and anesthesia assistants—providers who have materially different training, licensure, and permissible scope of practice, and, as a result, different compensation levels. He also includes within the proposed class "anesthesia service providers" employed by Munson Healthcare, despite the fact that the

alleged agreement in no way restricts Munson Healthcare employees (or the employees of hospitals affiliated with Munson Healthcare) from seeking or obtaining alternative employment anywhere or at any time. Plaintiff seeks to recover under both federal and Michigan antitrust law.

## STANDARD OF REVIEW

As this Court is aware, in evaluating a motion to dismiss, it "must determine whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Longmire v. Mich. Dep't of Corr.*, 454 F. Supp. 3d 702, 704 (W.D. Mich. 2020) (Jonker, J.) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* at 705 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)); *see also In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir. 2009) ("[T]o survive a motion to dismiss, the complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory.") (internal quotation omitted). "Although the plausibility standard is not equivalent to a 'probability requirement, it asks for more than a sheer possibility that a defendant has acted unlawfully.'" *Longmire*, 454 F. Supp. 3d at 705 (quoting *Iqbal*, 556 U.S. at 678) (cleaned up). When evaluating the complaint's factual content, "conclusory allegations or legal conclusions masquerading as factual allegations will not suffice," and the court "need not accept as true legal conclusions or unwarranted factual inferences." *Travel Agent Comm'n*, 552 F.3d at 903 (cleaned up).

"A Sherman Act Section 1 complaint," specifically, "must contain 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action'; rather, it must 'raise a right to relief [above] the speculative level.'" *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (quoting *Twombly*, 550 U.S. at

555). This requirement is important in an antitrust case, "lest a plaintiff with a largely groundless claim be allowed to take up the time of a number of other people, with the right to do so representing an *in terrorem* increment of the settlement value." *Twombly*, 550 U.S. at 557-58 (quotation marks omitted). "The costs of modern federal antitrust litigation . . . counsel against sending the parties into discovery when there is no reasonable likelihood that the plaintiffs can construct a claim from the events related in the complaint." *Id.* at 578 (quotation mark omitted). Thus, "'a district court must retain the power to insist on some specificity in pleading before allowing a potentially massive factual controversy to proceed.'" *Twombly*, 550 U.S. at 558 (quoting *Associated Gen. Contractors of Cal., Inc. v. Carpenters*, 459 U.S. 519, 528 n.17 (1983)); *see also Travel Agent Comm'n*, 583 F.3d at 908-09 ("Pursuant to *Twombly*, district courts must assess the plausibility of an alleged illegal agreement *before* parties are forced to engage in protracted litigation and bear excessive discovery costs.") (emphasis in original); *NicSand, Inc. v. 3M Co.*, 507 F.3d 442, 450 (6th Cir. 2007) ("Given the limited 'success of judicial supervision in checking discovery abuse' and 'the threat that discovery expense will push cost-conscious defendants to settle even anemic cases' . . . the federal courts have been reasonably aggressive in weeding out meritless antitrust claims at the pleading stage.") (quoting *Twombly*, 550 U.S. at 559); *Ass'n of Am. Physicians & Surgeons., Inc. v. Am. Bd. of Med. Specialties*, No. 20-3072, 2021 U.S. App. LEXIS 30271, at *9 (7th Cir. Oct. 8, 2021) ("*Twombly* bars the discover-first, plead-later approach that [plaintiff] urges us to adopt. For good reason: modern antitrust litigation is expensive."). As set forth below, Plaintiff clearly fails to state a claim under *Twombly*.

## <u>ARGUMENT</u>

I.    **THE COMPLAINT DOES NOT PLAUSIBLY PLEAD THE EXISTENCE OF THE ALLEGED AGREEMENT BETWEEN MUNSON HEALTHCARE AND TAA.**

The "crucial question" under Section 1 of the Sherman Act is "whether the challenged anticompetitive conduct stems from independent decision or from an agreement . . . ." *Twombly*, 550 U.S. at 553. "A plaintiff must allege 'enough factual matter to suggest that an agreement [to unreasonably restrain trade] was made.'" *Total Benefits*, 552 F.3d at 434 (quoting *Twombly*, 550 U.S. at 556). A plaintiff can show an antitrust agreement through either direct or circumstantial evidence. *See Hyland v. HomeServices of Am., Inc.*, 771 F.3d 310, 318 (6th Cir. 2014). "[D]irect evidence in the Section 1 antitrust context 'must be evidence that is explicit and requires no inferences to establish the proposition or conclusion being asserted.'" *Id.* (quoting *In re Baby Food Antitrust Litig.*, 166 F.3d 112, 118 (3d Cir. 1999)). "[C]ircumstantial evidence includes 'everything else, including ambiguous statements.'" *Id.* (quoting *In re High Fructose Corn Syrup Antitrust Litig.*, 295 F.3d 651, 662 (7th Cir. 2002)). Here the only question before this Court is whether Plaintiff's allegations that someone told him something about an alleged agreement, whether considered direct or circumstantial, are sufficient to render Plaintiff's claim plausible. They are not, and the Complaint should be dismissed accordingly.

In evaluating whether a plaintiff has plausibly alleged an agreement, the Sixth Circuit considers whether the complaint includes "the 'who, what, where, when, how or why'" of the alleged agreement. *Total Benefits*, 552 F.3d at 437. This standard is based on *Twombly,* where the Supreme Court found a complaint that "'mentioned no specific time, place or person involved in the alleged conspiracies'" inadequate to state a claim. *Id.* (quoting *Twombly*, 550 U.S. at 565 n.10). When a complaint is missing those factual allegations, permitting a plaintiff to proceed is ill-advised because "'a defendant seeking to respond . . . [has] little idea where to

begin.'" *Id.* (quoting *Twombly*, 550 U.S. at 565 n.10). The Sixth Circuit, applying this standard in *Total Benefits,* found an antitrust claim inadequately pled when the complaint did not "allege when Defendants joined the [] conspiracy, where or how this was accomplished, and by whom or for what purpose," did not provide a "factual description of the substance of the statements" allegedly made to further the conspiracy, and did not explain "where or when during [the alleged] multiple-year time frame any unlawful agreements or understandings might have occurred." *Id.* at 436.

Courts applying this standard to alleged agreements between companies not to hire each other's employees have dismissed complaints where, like here, the plaintiff's claims are based on assertions that someone has allegedly told him something about some purported agreement. For example, in *Frost v. LG Elecs., Inc.,* No. 16-cv-05206-BLF, 2018 U.S. Dist. LEXIS 204502 (N.D. Cal. June 22, 2018), the plaintiffs alleged that LG and Samsung agreed to "not recruit or hire each other's employees." *Id.* at *3. Plaintiffs argued they had pled "sufficient direct evidence" to establish the plausibility of the alleged agreement based on (1) a statement from a "third-party recruiter" to one plaintiff "that 'LG' and 'Samsung' 'have an agreement that they won't steal each other's employees'"; (2) a statement from "a Samsung America employee" that "'Samsung and LG do not hire each other's employees'"; (3) "unnamed colleagues" at LG USA telling a plaintiff "on an unspecified date that LG and Samsung had a 'gentlemen's agreement' in Korea not to hire each other's employees, which 'trickles down' to the respective United States subsidiaries"; and (4) "the head of human resources at LG's Indian subsidiary" stating in a newspaper article "that 'his company and Samsung have an 'understanding' not to hire from each other . . . without a gap of a year.'" *Id.* at *12. The court found these allegations insufficient and dismissed the complaint because it did "not contain *any* evidentiary facts regarding the

'specific time, place, or person' involved in the alleged agreement as required . . . ." *Id.* at *13 (emphasis in original). The Ninth Circuit affirmed. *Frost v. LG Elecs., Inc.*, 801 F. App'x 496, 498 (9th Cir. 2020).

Similarly, in *Fonseca v. Hewlett-Packard Co.*, No. 19cv1748-GPC-MSB, 2020 U.S. Dist. LEXIS 144477 (S.D. Cal. Aug. 11, 2020), the court found the allegations in a complaint insufficient as a matter of law. There, plaintiff alleged that HP and 3D Systems had a "no poach" agreement regarding each other's employees. *Id.* at *7. The plaintiff alleged that the agreement began in 2016 when "a HP executive . . . called [3D Systems's CEO] and told him to stop 'hiring away HP's employees'" and "'during this phone call and subsequent communications . . . in 2016, [3D Systems's CEO] agreed to comply so long as the arrangement was mutual.'" *Id.* at *7-8. The court found these allegations insufficient to plausibly plead an agreement because the complaint "fail[ed] to identify the reporting witness to this call or otherwise demonstrate that he or she exists, . . . fail[ed] to state when in 2016 the telephone call occurred [or] where [the executives] were when the call was made," and did not "identify any email or document that memorialized the [agreement].'" *Id.* at *17-18. The court reasoned, "While the reported telephone conversation provides a 'who and what was said,' the specifics are wanting and fail to go beyond allegations that are based 'on information and belief.'" *Id.* at *18. The court dismissed the complaint because it "ask[ed] the Court to take too big a leap by inferring a conspiracy based on a dearth of direct evidence." *Id.* (quotation marks omitted). The Ninth Circuit also affirmed. *Fonseca v. Hewlett-Packard Co.*, No. 20-56161, 2021 U.S. App. LEXIS 30685, at *2 (9th Cir. Oct. 14, 2021) ("[W]e conclude the thorough and carefully reasoned opinion of the district court correctly articulates and applies the law to the facts of this case.").

So too in *Ulrich v. Moody's Corp.*, No. 13-CV-00008 (VSB), 2014 U.S. Dist. LEXIS 138082 (S.D.N.Y. Sept. 30, 2014). In *Ulrich*, the plaintiff alleged that Moody's and S&P had "an agreement not to recruit or hire employees of the other." *Id.* at \*48. The complaint contained an allegation of a "statement supposedly made to Plaintiff in February 2012 by a managing director of Moody's in Hong Kong that the companies had an 'informal agreement not to hire or poach each other's staff,'" and "statements from two former [] executives" of a Moody's subsidiary "concerning an 'unspoken rule' against hiring from S&P." *Id.* at \*3, \*48 (internal citation omitted). Yet the court concluded that he "alleged no actual facts—direct or circumstantial— demonstrating [the] agreement." *Id.* at \*48. The court rejected the plaintiff's proffered direct evidence as not even "com[ing] close" to alleging an agreement: "Proving that one manager for one of the companies made such a statement, or that two other executives sensed an 'unspoken rule,' fails to detail any particular action on the part of either company, or come close to outlining the plausibility of an agreement between the two companies." *Id.* at \*48-49. Those allegations fell "far short of the standard necessary to survive a motion to dismiss on a claim that companies entered an anti-competitive agreement not to recruit or hire each other's employees." *Id.* at \*50. The "Plaintiff may have described (at the highest level of generality) the victims and effects of the alleged agreement, but he fail[ed] to answer the 'basic questions' of how and by whom the agreement was reached." *Id.* at \*50-51.

The allegations here fall even further short of establishing the plausibility of the alleged naked agreement than those in *Frost, Fonseca,* and *Ulrich*. **First**, Plaintiff does not allege who at Munson Healthcare or TAA negotiated or entered into the alleged agreement. Notably, in both *Frost* and *Ulrich,* the court found that plaintiffs' failure to allege "who" had entered into the purported agreements weighed against finding the allegations of an agreement plausible. *See*

*Frost*, 2018 U.S. Dist. LEXIS 204502, at *14 (the allegation that "'the LG *chaebol* and Samsung *chaebol* reached this agreement at and through the most senior levels of their *chaebol* corporate control structure'" did not provide the "who" because "[p]resumably, LG and Samsung have many senior officers" and "Plaintiffs do not identify any particular officer involved in the alleged conspiracy by name or title"); *Ulrich*, 2014 U.S. Dist. LEXIS 138082, at *50-51. And in *Fonseca*, where the plaintiff pled that particular named executives at the two companies had a phone call and other communications during which the agreement was reached, the allegations were still insufficient to plead the plausibility of an agreement. 2020 U.S. Dist. LEXIS 144477 at *7-8, *18. Here, even the allegations concerning statements by an employee and CEO at an unnamed hospital and by "Munson human resource employees" do not cure Plaintiff's failure to allege the relevant "who" because they do not identify who allegedly entered into the purported agreement.[3]

**Second**, Plaintiff admits he does not know when the Defendants entered into the alleged agreement. (RE 1, PageID.1-2 at ¶ 2.) Even the additional allegations about when the purported

---

[3]    The fact that Plaintiff fails to identify who allegedly told him about the purported agreement also cuts against finding his allegations sufficient to plausibly allege an agreement. Courts recognize this problem when plaintiffs rely on purported statements from unnamed alleged co-conspirators. *See, e.g., Ley v. Visteon Corp.*, 543 F.3d 801, 811 (6th Cir. 2008), *abrogated in irrelevant part by Frank v. Dana Corp.*, 646 F.3d 954 (6th Cir. 2011) ("statements of an anonymous source" not "accorded much weight" because "allegations of confidential witnesses must be discounted and usually that discount will be steep") (quotation marks omitted). That principle has been applied in antitrust cases. *See, e.g., Superior Offshore Int'l, Inc. v. Bristow Grp.*, 738 F. Supp. 2d 505, 512-13 (D. Del. 2010) ("statement reportedly made by an unidentified 'operator' . . . not direct evidence of an agreement" because its "relevance . . . as evidence of an agreement" would "require[] multiple speculative inferences"). As in those cases, little, if any, weight should be given to statements from an unnamed hospital "recruiter" or "employee" and unnamed "human resources employees" without any facts that would indicate those anonymous individuals could reliably opine on the existence of the alleged agreement. *See also Fonseca*, 2020 U.S. Dist. LEXIS 144477 at *18 (discounting allegations about the alleged call that was the impetus for the alleged no-poach agreement because the complaint "fails to identify the reporting witness to this call or otherwise demonstrate that he or she exists").

agreement was reached in *Frost* and *Fonseca*—allegations wholly missing here—were not enough to find the claims plausible. *Frost¸* 2018 U.S. Dist. LEXIS 204502, at *13-14 (alleging the agreement began "'no later than January 1, 2005'" was not sufficient because it was "purely speculative and included in the complaint solely for the purpose of including some date") (emphasis omitted); *Fonseca*, 2020 U.S. Dist. LEXIS 144477, at *17-18 (noting plaintiff "fails to state when in 2016 the telephone call occurred"). Plaintiff's failure to allege anything about when the alleged agreement was entered into therefore also weighs against finding his allegations sufficient.

*Third*, Plaintiff does not allege where defendants allegedly entered into the purported agreement. The same missing allegations in *Fonseca*, where the plaintiffs also did not allege the "where," weighed against finding the allegations of an agreement plausible. *See* 2018 U.S. Dist. LEXIS 204502, at *17-18 (complaint did not allege "where [the executives] were when the call was made"). And the court in *Frost* even found it insufficient that the plaintiff alleged that the agreement was entered into within the two cities where the defendants were headquartered because the complaint did not include "any detail as to *where* in those very large cities the parties met (if they did)." 2018 U.S. Dist. LEXIS 204502 at *14. (emphasis in original). Plaintiff alleges even less here.

*Finally*, Plaintiff does not allege "why" Munson Healthcare would ever agree to the alleged naked agreement that would limit its ability to hire TAA employees, but would leave its employees subject to being hired away. Plaintiff's allegations about the alleged effects of the purported agreement, (*see* RE 1, PageID.7-8 at ¶¶ 25, 29-30), ignore that the agreement Plaintiff alleges is one-sided. By failing to allege "why" Munson Healthcare would enter into a one-sided, "naked" agreement, what Plaintiff *does* allege is rendered highly implausible. *See Superior Prod.*

*P'ship v. Gordon Auto Body Parts Co.*, 784 F.3d 311, 319 (6th Cir. 2015) ("[C]ourts are more likely to infer an illegal agreement as the economic plausibility of anticompetitive conduct grows."); *Lifeline Ltd. No. II v. Conn. Gen. Life Ins. Co.*, 821 F. Supp. 1201, 1205 (E.D. Mich. 1993) (motion to dismiss granted because "[t]he conspiracy that plaintiff alleges makes no economic sense"); *Fonseca*, 2020 U.S. Dist. LEXIS 144477 at *18-19 (the fact that one company had no incentive to enter into the alleged agreement cuts against its plausibility).[4]

In sum, Plaintiff's Complaint simply does not contain sufficient details about the who, what, when, where, and why of the purported naked, no-hire agreement. He alleges that he could not be considered for one job, at one unidentified hospital, purportedly because of rumors relayed to him by unidentified personnel. He does not allege that he was told the same thing with

---

[4]     Had Plaintiff alleged a one-sided hiring restriction was part of a legitimate business relationship between TAA and Munson Healthcare or a Munson Healthcare affiliated hospital—rather than the naked agreement alleged here—such an agreement would be analyzed under the rule of reason. *See, e.g., Med. Ctr. at Elizabeth Place, LLC v. Atrium Health Sys.*, 922 F.3d 713, 724-25 (6th Cir. 2019) (ancillary restraints analyzed under rule of reason); *Consultants & Designers, Inc. v. Butler Serv. Grp., Inc.*, 720 F.2d 1553, 1560-62 (11th Cir. 1983) (restrictive employment covenant analyzed under rule of reason because it had "a legitimate and valid business purpose"). And a rule of reason claim would be doomed here, as it would require Plaintiff to show that Defendants have market power in a relevant labor market—something Plaintiff cannot even credibly allege (much less ultimately prove) given that courts have found the labor market for providers like those employed by TAA to be *national*, not local or even state-wide. *See, e.g., Minn. Ass'n of Nurse Anesthetists v. Unity Hosp.*, 208 F.3d 655, 661 (8th Cir. 2000) ("Plaintiffs[] claim that the labor market for nurse anesthetist services has been injured . . . . But as plaintiffs concede, given the mobility of these health care professionals, the proper geographic bounds of that market are nationwide. There is no assertion defendants have national market power . . . ."); *Reddy v. Good Samaritan Hosp. & Health Ctr.*, 137 F. Supp. 2d 948, 969 (S.D. Ohio 2000) ("[A]nesthesiologists compete in a nationwide job market for jobs . . . . Preventing the Plaintiff from practicing his profession in one hospital cannot have anti-competitive effects in that market."); *Balaklaw v. Lovell*, 882 F. Supp. 892, 905 (N.D.N.Y. 1993) ("[I]nsofar as the relevant product market is found to include the job market for anesthesia service positions, the relevant geographic market is nationwide."); *Dos Santos v. Columbus-Cuneo-Cabrini Med. Ctr.*, No. 81 C 4296, 1983 U.S. Dist. LEXIS 12377, at *4-5 (N.D. Ill. Oct. 25, 1983) ("[T]here is a national anesthesiology market in which anesthesiologists operate and offer their services and in which the Medical Center can and did turn to for a supplier of anesthesiology services.").

respect to any other job at that or any other hospital; nor does he allege that any other anesthesia service provider was told the same thing when they inquired about that or any other job at that or any other hospital. This is plainly insufficient. *See Frost*, 801 F. App'x at 498 (affirming dismissal of a complaint because "the statements" alleged in the complaint "and all the plausible inferences that can be drawn from them do not establish who, did what, to whom (or with whom), where, and when"); *Frost*, 2018 U.S. Dist. LEXIS 204502, at *13 ("[T]he SAC does not contain any evidentiary facts regarding the 'specific, time, place, or person' involved in the alleged agreement as required . . . ."); *Ulrich*, 2014 U.S. Dist. LEXIS 138082, at *50-51 ("Plaintiff may have described (at the highest level of generality) the victims and effects of the alleged agreement, but he fail[ed] to answer the 'basic questions' of how and by whom the agreement was reached."); *Fonseca*, 2020 U.S. Dist. LEXIS 144477, at *18 ("While the reported telephone conversation provides a 'who and what was said,' the specifics are wanting . . . Like *Frost*, the latest allegations in the TAC ask[] the Court to take too big a leap by inferring a conspiracy based on a dearth of direct evidence.") (quotation marks omitted).

## II.     THE COMPLAINT DOES NOT PLAUSIBLY PLEAD THAT MUNSON HEALTHCARE PARTICIPATED IN THE ALLEGED AGREEMENT.

In addition to alleging an antitrust agreement, to state an antitrust claim the complaint must "specify how these defendants [were] involved in the alleged conspiracy." *In re Travel Agent Comm'n*, 583 F.3d at 905. If the complaint "fails to allege particular facts against a particular defendant, then the defendant must be dismissed." *SD3, LLC v. Black & Decker (U.S.) Inc*, 801 F.3d 412, 422-23 (4th Cir. 2015). And courts do just that. *See id; In re Travel Agent Comm'n*, 583 F.3d at 905; *In re Ry. Indus. Emp. No-Poach Antitrust Litig.*, 395 F. Supp. 3d 464, 494-95 (W.D. Pa. 2019) (dismissing a defendant for failure to include sufficient factual allegations that the defendant knew of and intended to join the alleged no-poach agreement);

*Mich. Div. - Monument Builders of N. Am. v. Mich. Cemetery Ass'n*, 458 F. Supp. 2d 474, 485 (E.D. Mich. 2006), *aff'd* 524 F.3d 726 (6th Cir. 2008) (dismissing a complaint that included "a 'laundry list' of general allegations, without any references to conduct by any specific . . . defendant); *see also In re Auto. Parts Antitrust Litig.*, No. 12-md-02311, 2016 U.S. Dist. LEXIS 193193, at *404 (E.D. Mich. Apr. 13, 2016) (the complaint "must allege facts creating at least an inference as to each Defendant's knowing participation in a conspiracy").

Here, despite the fact that the hospitals affiliated with Munson Healthcare are separate and distinct corporate entities (*see supra*), Plaintiff does not differentiate between alleged conduct by Munson Healthcare and alleged conduct by its affiliated hospitals. That alone is enough reason to dismiss the Complaint as to Munson Healthcare; antitrust claims against a "group" of affiliated companies are insufficient where each affiliates' individual participation is not specified. *See, e.g.*, *In re Processed Egg Prods. Antitrust Litig.*, 821 F. Supp. 2d 709, 745 (E.D. Pa. 2011) (dismissing claims against corporate affiliates because "by lumping the three entities together, [plaintiffs] have failed to allege specific facts that either connect each or any individual entity to the overarching conspiracy, or alternatively, satisfy the requirements for imputing another affiliated entity's liability to the [corporate affiliates]"); *Precision Assocs. v. Panalpina World Transp. (Holding) Ltd.*, No. 08-CV-42 (JG)(VVP), 2011 U.S. Dist. LEXIS 51330, at *51-72 (E.D.N.Y. Jan. 4, 2011) (same because "the plaintiffs' method of 'lumping' or 'grouping' corporate families impermissibilty ignores corporate separateness" and the complaint did not "allege that each individual defendant joined the conspiracy and played some role in it"); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1117 (N.D. Cal. 2008) (same because "general allegations" as to an entity defined to include multilpe corporate affilates are "insufficient to put specific defendants on notice of the claims against them"); *see also In re*

*Packaged Seafood Prods. Antitrust Litig.*, 338 F. Supp. 3d 1118, 1183-84 (S.D. Cal. 2018) (same because the complaint did not allege sufficient facts to establish participation and instead "impermissibily engaged in group pleading without differentiating between who was employed by what entity"); *In re Zinc Antitrust Litig.*, 155 F. Supp. 3d 337, 384 (S.D.N.Y. 2016) (dismissing claims for failure "to separately state a claim against each and every defendant joined in this lawsuit" because the "allegations as to a number of defendants . . . are sparse to the point of near non-existence or are grouped together with specific allegations relating to their affiliated but legally separate entities"); *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-MD-2420 YGR, 2014 U.S. Dist. LEXIS 7516, at *77-81 (N.D. Cal. Jan. 21, 2014) (rejecting plaintiffs' allegations that "references to corporate families or companies by a single name signifies that 'employees or agents of entities within that corporate family engaged in conspiratorial acts on behalf of every company in that family'" because it does "not adequately allege conscious participation in the conspiracy").

Further, Plaintiff's allegation that an unnamed employee at an unnamed hospital affiliated with Munson Healthcare allegedly said the hospital could not hire Plaintiff, (RE 1, PageID.4-5 at ¶ 15-16), does not allege any action by Munson Healthcare. Nor does the allegation that the unnamed hospital employee said that the hospital's CEO provided details about the purported agreement, (RE 1, PageID.5 at ¶ 17), or the allegation that "Munson human resources employees" "affirmed" the agreement's existence, (RE 1, PageID.5 at ¶ 18), suffice. Even assuming Plaintiff has alleged that a Munson Healthcare employee said something, it, at best, alleges only knowledge of the purported agreement. But knowledge of an agreement is not enough; allegations that a defendant participated in the alleged conspiracy are required. *See, e.g., Ry. Indus. Emp.*, 395 F. Supp. 3d at 494 ("Allegations that [a defendant] *knew* about the

conspiracy—without more—are insufficient to show plausibly that [the defendant] was a member of an alleged conspiracy in this case.") (emphasis in original); *Ulrich*. 2014 U.S. Dist. LEXIS 138082 at \*48-49 (alleged statements from a managing director and former executives did not even "*come close* to outlining the plausibility of an agreement between the two companies."). And if Plaintiff's allegations merely refer to conduct by an employee of a hospital affiliated with Munson Healthcare, that in no way provides a sufficient factual basis for Plaintiff's allegation that Munson Healthcare participated in any conspiracy. *See Frost*, 2018 U.S. Dist. LEXIS 204502 at \*16-17 (declining to find the alleged agreement plausible based on "statements and experiences of employees" at subsidiaries, which "do not give rise to a plausible claim that top-level executives at" the parent companies "entered into a collusive agreement" and to hold otherwise would be "asking the Court to make too big a leap") (emphasis omitted).

The allegation that the purported agreement covered "any Munson facility," (RE 1, PageID.4-5 at ¶ 16), also does not satisfy Plaintiff's pleading obligations as to Munson Healthcare. Although Plaintiff does not allege what a "Munson facility" is, the suggestion that the alleged agreement may have covered one or more of the hospitals affiliated with Munson Healthcare does not sufficiently allege Munson Healthcare's participation in the alleged agreement pled in the Complaint.

Finally, even if this Court were to consider whether Plaintiffs' allegations were sufficient to state a claim against some unidentified hospital affiliated with Munson Healthcare (and they are not), that would not satisfy Plaintiff's pleading obligations as to Munson Healthcare because Plaintiff does not allege that Munson Healthcare can be held liable for that other company's actions. In order to state a claim against a corporation for the acts of an affiliated company, a plaintiff must allege that the corporation is an "alter ego" of the other company such that the

court should pierce the corporate veil. *See State Farm Mut. Auto. Ins. Co. v. Nat'l Gen. Ins. Co.*, No. 1:15-cv-1314, 2017 U.S. Dist. LEXIS 220757, at *3 (W.D. Mich. Feb. 9, 2017) ("It is a well-recognized principle that separate corporate entities will be respected. Michigan law presumes that, absent some abuse of the corporate form, even parent and subsidiary corporations are separate and distinct entities.") (citations omitted).

Courts have repeatedly dismissed antitrust claims seeking to hold defendants liable for the alleged antitrust violations of an affiliated company when the plaintiffs do not allege sufficient facts to make alter ego liability plausible. *See SD3,* 801 F.3d at 423 (dismissing claims because plaintiff "alleged no facts suggesting the kind of unity of interests that we usually require a party to plead before permitting them to advance an alter ego theory"); *In re Suboxone (Buprenorphine Hydrochloride & Naloxone) Antitrust Litig.*, MDL No. 2445; CIV. A. NO. 16-5073, 2017 U.S. Dist. LEXIS 176555, at *41 (E.D. Pa. Oct. 25, 2017) ("[N]one of the alleged facts set forth by Plaintiffs allow any reasonable inference that [the parent company] exercises a greater than normal degree of control over [its subsidiary], such that [the subsidiary] is [the parent company's] 'alter ego.'"); *In re Aluminum Warehousing Antitrust Litig.*, No. 13-md-2481 (KBF), 2015 U.S. Dist. LEXIS 26412, at *22 (S.D.N.Y. Mar. 4, 2015) (dismissing claims against corporate affiliates "based solely on corporate proximity"); *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 419 (S.D.N.Y. 2011) ("Whether the joint ventures or subsidiaries did anything actionable is not relevant with respect to the liability of the Parent Corporations absent a basis to pierce the corporate veil, and none is alleged."). Plaintiff's Complaint does not even mention the different legal entities, let alone explain how they are related or even begin to plead non-conclusory facts sufficient to allege any abuse of the corporate form. So, in addition to not sufficiently alleging Munson Healthcare itself participated in the alleged agreement, the

Complaint fails to state an antitrust claim against Munson Healthcare for the conduct of any affiliated hospital. Plaintiff's Complaint should be dismissed.[5]

## III. PLAINTIFF'S MICHIGAN ANTITRUST REFORM ACT CLAIM FAILS FOR THE SAME REASONS.

Because the Michigan Antitrust Reform Act ("MARA") and the Sherman Act "mirror each other," courts "apply the same analysis" to claims under both statutes. *Am. Council of Certified Podiatric Physicians & Surgeons v. Am. Bd. of Podiatric Surgery, Inc.*, 323 F.3d 366, 368 n.1 (6th Cir. 2003). MARA itself provides that courts "shall give due deference to interpretations given by the federal courts to comparable antitrust statutes." M.C.L. § 445.784; *see also Innovation Ventures, LLC v. Liquid Mfg., LLC*, 499 Mich. 491, 513-14 (2016) ("But while MARA does not address the standard for evaluating a noncompete agreement between two business entities, the statute provides general guidance about where courts should look in the absence of specific rules. MCL 445.784(2) instructs courts to look to federal interpretation of comparable statutes . . . ."). So Plaintiff's "state law claims rise and fall with his federal antitrust claims." *Z Techs. Corp. v. Lubrizol Corp*., 753 F.3d 594, 605 (6th Cir. 2014). Accordingly, when courts dismiss Sherman Act claims, they also dismiss MARA claims. *See, e.g., id.*; *Elias v. Fed. Home Loan Mortg. Corp.*, 581 F. App'x 461, 468-49 (6th Cir. 2014); *Energy Conversion*

---

[5]      Plaintiff's failure to allege sufficient facts to indicate that Munson Healthcare was part of the alleged conspiracy requires dismissal of Plaintiff's claims against both Munson Healthcare and TAA. First, failure to allege facts as to a defendant's participation in the alleged conspiracy requires dismissal of that defendant. *See In re Travel Agent Comm'n*, 583 F.3d at 905; *SD3*, 801 F.3d at 422-23; *In re Ry. Indus. Emp.*, 395 F. Supp. 3d at 494-95. Second, where the alleged conspiratorial agreement was between only two parties, as here, failure to allege facts as to one requires dismissal of both. *See Geddie v. Seaton*, No. 3:06-CV-0895-R, 2006 U.S. Dist. LEXIS 55106, at *26 (N.D. Tex. Aug. 8, 2006) (dismissing one defendant in an antitrust conspiracy case, after finding the allegations insufficient to allege two other defendants were part of the conspiracy, because the remaining defendant "cannot engage in a conspiracy by himself"); *see also Downing v. Ford Motor Co.*, No. 18-1335, 2018 U.S. App. LEXIS 27339, at *5 (6th Cir. Sep. 24, 2018) (a plaintiff must allege "an agreement between two or more economic entities").

*Devices Liquidation Trust v. Trina Solar Ltd.*, No. 13-14241, 2014 U.S. Dist. LEXIS 154736, at

*19 (E.D. Mich. Oct. 31, 2014); *City of Pontiac v. Blue Cross Blue Shield of Mich.*, No. 11-

10276, 2012 U.S. Dist. LEXIS 45082, at *23 (E.D. Mich. Mar. 30, 2012); *see also Little Caesar

Enters., Inc. v. Smith*, 895 F. Supp. 884, 898 (E.D. Mich. 1995) ("Michigan antitrust law is

identical to federal law and follows the federal precedents . . . . [T]here is no practical difference

between the federal and state claims . . . ."); *Aurora Cable Commc'ns, Inc. v. Jones Intercable,

Inc.*, 720 F. Supp. 600, 603 (W.D. Mich. 1989) ("The foregoing analysis of [plaintiff's] claims

under the Sherman Act also applies to its claims under the Michigan Antitrust Reform Act . . .

."). Because Plaintiff's Sherman Act claim fails, for the reasons set forth above, so does his

MARA claim.

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that this Court dismiss all of

Plaintiff's claims with prejudice, and grant such further relief as the Court deems just.

DATED: October 15, 2021          Respectfully submitted,

                                 DYKEMA GOSSETT PLLC

                                 Attorneys for Defendant Munson Healthcare

                                 By: /s/ Howard B. Iwrey
                                 Howard B. Iwrey
                                 39577 Woodward Avenue, Suite 300
                                 Bloomfield Hills, MI 48304
                                 (248) 203-0700
                                 hiwrey@dykema.com

                                 James M. Burns
                                 1301 K Street N.W., Suite 1100 West
                                 Washington, D.C. 20005
                                 (202) 906-8600
                                 jburns@dykema.com

Mark J. Magyar
300 Ottawa Avenue N.W., Suite 700
Grand Rapids, MI  49503
(616) 776-7500
mmagyar@dykema.com

BASS, BERRY & SIMS PLC

Attorneys for Defendant Traverse Anesthesia Associates

By: /s/ Robert W. Horton (with permission)
Robert W. Horton
R. Dale Grimes
Nicholas J. Goldin (admission pending)
150 Third Avenue South, Suite 2800
Nashville, TN 37201
(615) 742-6200
bhorton@bassberry.com
dgrimes@bassberry.com
nick.goldin@bassberry.com